UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JANINE M. FREEMAN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 13-cv-05045 RJB

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

Noting Date: February 21, 2014

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 13, 15, 16).

After considering and reviewing the record, the Court finds that the ALJ failed to evaluate properly the medical and the lay evidence. Specifically, the ALJ failed to explain adequately his finding of an inconsistency between the assignment of a global

assessment of functioning of 40 by an examining doctor and other notes by the doctor or plaintiff's activities of daily living. Based on a review of the relevant record, there is no apparent inconsistency.

Therefore, the ALJ's reliance on this finding without adequate explanation of why the ALJ's interpretation was more correct than the interpretation of the examining doctor was legal error. Because full adoption of the discredited opinions likely would alter the finding regarding plaintiff's residual functional analysis, and hence, the ultimate determination regarding disability, this legal error is not harmless error.

For these reasons, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## BACKGROUND

Plaintiff, JANINE M. FREEMAN, was born in 1976 and was 32 years old on the alleged date of disability onset of April 10, 2009 (*see* Tr. 153-54). Plaintiff has a high school diploma and has a Cook's Helper certificate from Olympic College (Tr. 43-44). Plaintiff has worked a variety of jobs including sales associate, hostess, cocktail server, receptionist, childcare provider, clerk and assistant manager (Tr. 178). Her most recent job was as a telemarketer, but did not continue past the training period because, according to plaintiff, "I wasn't making the grades on the tests, I wasn't being able to focus . . ." (Tr. 52).

Plaintiff has at least the severe impairments of "bipolar II disorder and drug and alcohol abuse (20 CFR 404.1520(c))" (Tr. 14).

At the time of the hearing, plaintiff was living in a duplex with her boyfriend and her three children (Tr. 44-45).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act on October 5, 2009 (*see* Tr. 153-154). The application was denied initially and following reconsideration in 2010 (Tr. 73-89). Plaintiff's requested hearing was held before Administrative Law Judge Larry Kennedy ("the ALJ") on May 2, 2011 (*see* Tr. 38-72). On June 6, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 9-27). He made the following finding regarding plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following non-exertional limitations. She could perform simple, routine tasks and follow short, simple instructions. She could do work that needs little or no judgment and could perform simple duties that can be learned on the job in a short period. She would [] have average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis(i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. She can deal with occasional work setting change. She is also able to engage in simple and superficial exchanges with coworkers and the public, but she is not able to deal with complex or demanding social exchanges.

(Tr. 17).

On November 23, 2012, the Appeals Council granted plaintiff's request for review based on "an error of law" (Tr. 28); indicated that it did "not find the [ALJ]'s rationale to be consistent with [the] agency's policy concerning the receipt of unemployment benefits[1]"; yet adopted the ALJ's "findings or conclusions regarding whether the claimant is disabled" (Tr. 4), finding that "[n]onetheless, in this case, the Appeals Council finds that the overall evidence, including the claimants' subjective complaints, her application for unemployment benefits, and her testimony regarding the same, supports a finding determination of not disabled (Tr. 6; *see also* Tr. 1-8, 28-32). *See* 20 C.F.R. § 404.981.

Specifically, the Appeals Council adopted "the Administrative Law Judge's rationale regarding the credibility of the claimant's subjective complaints, except that portion of the rationale regarding the claimant's application for unemployment benefits" (*see* Tr. 5). The Appeals Council adopted the ALJ's RFC determination and his "findings or conclusions regarding whether the claimant is disabled" (*see* Tr. 4) .

---

[1] According to the Appeals Council:

> The Chief Administrative Law Judge's memorandum, dated August 9, 2010, makes it clear that one's claim to be able to work doesn't contradict one's claim to be disabled under Social Security Rules. Under our sequential evaluation process, one can be found able to perform some work, and still be found disabled. . . . . The Chief Administrative Law Judge's memorandum also states that applications for unemployment benefits must be considered as part of the overall evidence of record that is to support the ultimate determination. While such an application cannot alone disqualify one for disability benefits, as the hearing decision suggests, it is to be considered as part of the sequential evaluation.

(Tr. 30).

| | |
|---|---|
| 1 | Plaintiff filed a complaint in this Court seeking judicial review in January, 2013 |
| 2 | (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this |
| 3 | matter ("Tr.") on April 2, 2013 (*see* ECF Nos. 10, 11). |
| 4 | In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or |
| 5 | not the Appeals Council improperly rejected the opinions of plaintiff's treating and |
| 6 | examining medical sources; (2) Whether or not the Appeals Council improperly rejected |
| 7 | plaintiff's subjective complaints; (3) Whether or not the Appeals Council improperly |
| 8 | rejected the lay witness statements; and (4) Whether or not the Appeals Council erred in |
| 9 | failing to conduct an adequate step five analysis (*see* ECF No. 13, p. 1). |

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§

423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit

what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

DISCUSSION

**(1) Whether or not the ALJ improperly rejected the opinions of plaintiff's treating and examining medical sources.**

Plaintiff argues that the Appeals Council improperly adopted the reasoning of the ALJ when determining plaintiff's RFC and this allegedly improper RFC included a rejection of the opinions of examining doctor, Dr. Dixon, as well as including a rejection of opinions from lay source ARNP Sara Weelborg (*see* Opening Brief, ECF No. 13, p. 11).

a. Dr. David M. Dixon, Ph.D., examining clinical psychologist

Dr. Dixon examined plaintiff on December 9, 2007 (*see* Tr. 264-71). He reviewed her medical records from Kitsap Mental Health (*see* Tr. 267); conducted a detailed history (*see* Tr. 264-67); and conducted his own formal Mental Status Examination ("MSE") (*see* Tr. 267-70). For example, Dr. Dixon noted plaintiff's report that she

stopped taking psychotropic medication, finding that it didn't help, and noted her report that when asked "what did help, she responded, 'Smoking weed'" (*see* Tr. 266). Dr. Dixon noted plaintiff's report that she had experienced "a suicidal state and 'took razor in the bath, drinking vodka, straight'" (*id.*).

Dr. Dixon noted many observations within normal limits and noted his observations that plaintiff was "cooperative throughout the examination" (Tr. 268). He assessed that her facial expression "displayed decreased variability" (*id.*). Dr. Dixon also assessed that plaintiff's "psychomotor speed demonstrated agitation" (*id.*).

Dr. Dixon assessed that plaintiff's "predominant mood was fear, anxiety, and apprehension, depression and sadness" and he observed the existence of "increased lability of affect, with tearfulness" (*id.*). However, he noted that plaintiff was able to joke, demonstrate humor, and that her "mood and affect were appropriate to her thought content" (*id.*). Dr. Dixon assessed that although plaintiff's intellectual functioning was "estimated to be in the low average to average range based upon sentence structure, fund of knowledge, educational history and vocabulary," she nevertheless demonstrated a good ability to abstract, based on her ability to understand and explain proverbs (*id.*).

Dr. Dixon noted that plaintiff had "no difficulty with Serial 3's," but demonstrated "difficulty with Serial 7's" (*id.*). Dr. Dixon assessed that plaintiff's "ability to concentrate and maintain an attention span is fair," although she was able to respond to simple and complex instructions and understand what was required of her" (*id.*).

Following repeated questioning, Dr. Dixon assessed that plaintiff's "judgment appears fair," but noted that there was "an impulsive flavor to it" (Tr. 270). He opined

that plaintiff's "judgment appears impaired by impulsiveness, as is her ability to perceive and accurately weigh alternatives, assess benefits and risks, and make reasonable life decision in activities of daily living" (*id.*).

Dr. Dixon diagnosed plaintiff with major depression, recurrent; bipolar disorder I; personality disorder, NOS; and schizoid personality disorder, among other diagnoses (*id.*). Dr. Dixon assessed that plaintiff's global assessment of functioning ("GAF") was 40 (*id.*). In his concluding statement, Dr. Dixon opined, among other opinions, that plaintiff's "ability to understand is average; Her ability to sustain concentration was fair; [and] her persistence was good" (Tr. 271). However, Dr. Dixon opined that plaintiff's "ability to interact socially was affected by being fearful of criticism, but she is emotional, anxious, and depressed" (*id.*). He opined that "It appears she would not adapt to new environmental conditions" (*id.*).

The ALJ assessed the opinion of Dr. Dixon as follows:

> Little weight is given to the conclusion from Dr. Dixon that the claimant's GAF was 40 (internal citation to Ex. 5F). A GAF score in the range of 31-40 represents some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood (e.g., depressed person avoids friends, neglects family and is unable to work). This assessment is contrary to Dr. Dixon's own description of the claimant's level of functioning. He noted that she had good eye contact and good functional social skills. Her body movements were described as appropriate, typical and unremarkable. According to this evaluation, she expressed herself very well. The observations was also made that she was able to respond to simple and complex instructions. The GAF score is also inconsistent with the claimant's activities of daily living discussed elsewhere in this decision. Dr. Dixon also concluded the claimant suffered from an Axis II personality disorder. However, the claimant's treating sources have not rendered the same conclusions. Accordingly, I give little weight to Dr. Dixon's opinions.

(Tr. 20 (internal citation to Tr. 264-71)).

First, the Court notes that the ALJ's final indication that Dr. Dixon rendered opinions not rendered by plaintiff's treating sources is not a reason in and of itself to fail to credit fully Dr. Dixon's opinions about plaintiff's functional abilities. Even if a treating or examining doctor's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Although an ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," here, that was not done, as will be discussed further below. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ provides only one reason for failing to credit fully Dr. Dixon's opinions regarding plaintiff's ability to work: he found that Dr. Dixon's assignment of a GAF of 40 was not consistent "own description of the claimant's level of functioning" and was "inconsistent with plaintiffs' activities of daily living discussed elsewhere in this decision" (*see* Tr. 20). However, as discussed below, the Court concludes that the ALJ did not adequately explain why his own interpretations, rather than those of the doctor, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

The Court finds plaintiff's argument, as set forth below, persuasive:

> First, Dr. Dixon's GAF score of 40 was not inconsistent with his observations of Ms. Freeman. As described by the ALJ, a GAF score in the range of 31 to 40 represents "some impairment in reality testing or communications (e.g. speech is at times illogical, obscure, or irrelevant) *or* major impairment in several areas such as work or school, family relations, judgment, thinking or mood (e.g., depressed person avoids friends, neglects family and is unable to work)." (internal citation to Tr. 20 (emphasis added)). In his report, Dr. Dixon specifically addressed Ms. Freeman's mood and judgment. Regarding her mood, he stated that "[h]er predominate mood was fear, anxiety, and apprehension, depression and sadness." (internal citation to Tr. 268). He went on to describe her judgment as "fair" but noted that it "appears impaired by impulsiveness, as is her ability to perceive and accurately weigh alternatives, assess benefits and risks, and make reasonable life decisions in activities of daily living." (internal citation to Tr. 270). These observations clearly indicate impairments in Ms. Freeman's judgment and mood and satisfy the requirements for assessing a GAF of 40. In discounting Dr. Dixon's assessment, the ALJ relied only on Dr. Dixon's observations of Ms. Freeman's physical communication skills and ignored his assessment of her judgment and mood. (internal citation to Tr. 20). Because an impairment in communication is not required to assess a GAF of 40, as evidenced by the use of "or" in the criteria, this was error.

(Opening Brief, ECF No. 13, p. 13).

The Court concludes that the ALJ's finding that Dr. Dixon's assignment of a GAF of 40 was not consistent "own description of the claimant's level of functioning" is not a finding based on substantial evidence in the record as a whole (*see* Tr. 20).

In addition, the Court concludes that the ALJ did not explain adequately how plaintiff's activities of daily living are inconsistent with Dr. Dixon's GAF of 40 (*see* Tr. 20). The Court notes plaintiff argument that the ALJ failed to account for the fact that plaintiff's "symptoms change frequently and some of her self-reported activities could have been performed while she was not suffering from a depressed episode and unable to leave her room" (*see* Opening Brief, ECF No. 13, p. 14). As noted by plaintiff, "the ALJ found that [plaintiff's] diagnosis of bipolar II disorder is a severe impairment" characterized by bouts of depression and manic episodes (*see id.* (*citing* Tr. 5, 15)).

When discussing plaintiff's activities of daily living, the ALJ notes first only that plaintiff "is able to perform household tasks, care for her three children, and work as a babysitter" (Tr. 16). Later, when discussing plaintiff's credibility, the ALJ noted the following regarding plaintiff's testimony about her activity level:

> At the hearing, the claimant testified that she lived in a duplex with her boyfriend and her three children for whom she has primary custody. Her testimony indicated that she had no driver's license due to an unpaid ticket. She mentioned that she had attempted to sell products for a phone company, but she was unable to pass the on-line tests for the job. Her testimony included the admission that she did work as a childcare provider for her friends during the time period in which she has alleged disability.
>
> In describing her situation since her alleged disability onset date, the claimant stated that her days varied from being manic to being depressed. Nevertheless, she helped friends with house cleaning and childcare. She also reported that her energy level was low on most days, which was accompanied by her feelings of worthlessness and suicidal ideation. When depressed, she stayed all day in bed.

(Tr. 18).

The ALJ additionally noted elsewhere in the decision the following activities of plaintiff:

> Her activity level does not support her allegations of disability. She reported in August 2010 that she was doing child care in her home in which she had two infants, two school age children, and her own three children (internal citation to Ex. 16F-18, 17F-2, and 17F-8). During this same month, the claimant, who had just moved into a 4-bedroom home, had been painting, sanding floors and moving furniture (internal citation to Ex. 17F-8). As noted in a function report completed by her ex-husband, she went out to friends' homes and to bars, as well as enjoyed drinking and dancing with friends. She loved to cook, by his report, and performed household chores (internal citation to Ex. 4E). Her performance of household chores and her engagement in some work activity, as well as her testimony about her search for work activity, not

> only indicate a functional level consistent with the ability to work but also her own belief in her ability to find and sustain a job.

(*id.*).

Here, based on the relevant record, and for the reasons included herein, the Court concludes that the ALJ failed to explain adequately his finding of an inconsistency between Dr. Dixon's assignment of a GAF of 40 and plaintiff's activities of daily living. The activities noted by the ALJ do not appear to address Dr. Dixon's assessments, such as his assessments regarding plaintiff's mood and judgment. As noted previously, regarding plaintiff's mood, Dr. Dixon opined that "[h]er predominate mood was fear, anxiety, and apprehension, depression and sadness" (Tr. 268). Dr. Dixon also assessed that plaintiff's judgment was "fair" but noted that it "appears impaired by impulsiveness, as is her ability to perceive and accurately weigh alternatives, assess benefits and risks, and make reasonable life decisions in activities of daily living" (Tr. 270).

The ALJ's finding of an inconsistency with respect to Dr. Dixon's assignment of a GAF of 40 is not based on substantial evidence in the record as a whole. Therefore, the ALJ has not provided specific and legitimate reasons for his failure to credit fully opinions from examining doctor, Dr. Dixon.

The Court also concludes that this error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Court noted multiple instances of the application of these principles. *Id*. (collecting cases). The court noted that "several of our cases have

held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Here, had the opinions from Dr. Dixon been adopted fully, plaintiff's RFC likely would be assessed differently, affecting the ultimate determination regarding disability in this matter. For example, Dr. Dixon opined that plaintiff's "ability to interact socially was affected by being fearful of criticism, [and that she was] emotional, anxious, and depressed" (Tr. 271). Therefore, the error is not harmless error.

b. ARNP Sara Weelborg

Because the Court has concluded that the medical evidence should be evaluated anew, based on the relevant record, the Court concludes that the other medical evidence provided by ARNP Weelborg should be evaluated anew as well.

**(2) Whether or not the ALJ improperly rejected the lay evidence.**

Plaintiff complains that the ALJ improperly rejected the lay evidence provided by her former husband (*see* Opening Brief, ECF No. 13, p. 22). According to plaintiff,

> The ALJ gave "little weight" to Mr. Hankins' opinion because it was "not supported by the objective medical evidence of record." There is no explanation as to which medical evidence Mr. Hankins' opinion conflicts with or why the ALJ believed there was a conflict. In fact, his opinion is entirely consistent with those of Ms. Freeman's treating and examining medical sources. Therefore, this too is reversible error because the ALJ failed to give reasons that are germane to Mr. Hankins. Thus, the Appeals Council erred in adopting the ALJ's rationale.

(Opening Brief, ECF No. 13, p. 22).

The ALJ included the following regarding the lay evidence:

> I also considered the function report from Allen Hankins, III, the claimant's former husband (Ex. 4E). Although he described her as sometimes sleeping late and lying around the house, he also reported that she took care of their three children, cleaned the house, washed the laundry, and babysat other children. He also reported that she went shopping and socialized with friends in dancing and drinking. I give little weight to this non medical opinion as it is not supported by the objective medical evidence of record.

(Tr. 21).

Although the ALJ rejected the lay evidence as "not supported by the objective medical evidence of record," the Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (*citing Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)). Because lay witness testimony cannot be discredited "as not supported by medical evidence in the record," and as the ALJ has not noted any contradiction between the lay testimony and the objective medical evidence, this lay evidence should be evaluated anew following

remand of this matter. *See id.* Following remand, the ALJ should take note of the following:

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, therapists and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e)).

Testimony from "other non-medical sources," such as friends and family members, *see* 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the

claimant's disability benefits. *Valentine v. Comm'r SSA,* 574 F.3d 685, 694 (9th Cir. 2009) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). In addition, according to the Ninth Circuit, absent "evidence that a specific [lay witness] exaggerated a claimant's symptoms *in order* to get access to his disability benefits," an ALJ may not reject that witnesses' testimony with a general finding that the witness is "an 'interested party' in the abstract." *Id.*

**(3) Whether or not the ALJ improperly rejected plaintiff's subjective complaints.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, for this reason, plaintiff's credibility should be assessed anew following remand of this matter.

**(4) Whether or not the ALJ erred in failing to conduct an adequate step five analysis.**

Similarly, because the Court concludes that the medical evidence should be evaluated anew, the step five finding, if reached during the sequential evaluation process following remand, should be assessed anew.

**(5) Whether this matter should be reversed and remanded with a direction to award benefits or for further administrative proceedings.**

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is

to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)). Although the ALJ failed to adequately explain why he failed to credit fully the medical opinion of Dr. Dixon, the opinions of Dr. Dixon were not uncontradicted.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d

639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

CONCLUSION

The ALJ erred in his review of the medical opinion from Dr. Dixon, failing to explain adequately a finding of inconsistency in the doctor's GAF and select factual findings from the record. This error is not harmless error.

The ALJ also indicated that he failed to credit the lay evidence because of a finding that it was not supported by the objective medical evidence, although this is not a germane reason for rejecting lay evidence according to the Ninth Circuit. Because of the error in the evaluation of the medical evidence, plaintiff's credibility should be assessed anew, as an analysis of a claimant's credibility and allegations depends, in part, on a proper review of the medical evidence.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

1 | Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

2 | matter for consideration on February 21, 2014, as noted in the caption.

3 |     Dated this 3rd day of February, 2014.

*(signature)*

J. Richard Creatura
United States Magistrate Judge